W. R. SPORIE *vs.* S. H. FITTS.

Androscoggin.    Opinion October 25, 1920.

*Assumpsit to recover a balance alleged to be due. Set-off. Verdict for plaintiff after a report from an auditor. Verdict set aside.*

In an action of assumpsit to recover an alleged balance of $2068.34 claimed to be in the defendant's hands, $96.04 for commissions, and $1972.20 for one-half of the joint profits on sales of hay, the defendant filed an account in set-off for $1892.61 due to him. The cause was sent to an auditor who reported that if the contentions of the plaintiff were sustained he is entitled to recover $1501.12 from the defendant, while if the defendant's contentions are sustained he should recover $2024.13 from the plaintiff.

The jury sustained the plaintiff's contentions and found in his favor in the sum of $1501.12.

Upon defendant's motion for new trial it is,

*Held:*

1.   That as to the claim for $96.04 there is no substantial controversy.
2.   That as to the claim for share of joint profits the plaintiff's contention is based upon the existence of three different contracts between the parties while the defendant claims that there was only one.
3.   That the plaintiff's testimony on this point is vague, unsatisfactory and unconvincing and is corroborated neither by testimony nor by circumstances.
4.   That the defendant's testimony as to the existence of only one contract governing joint profits bears the stamp of truth and is corroborated not only by circumstances, correspondence and conduct of both parties but by the plaintiff's writ in this very case. The writ sets forth one contract for profits covering the entire transaction from beginning to end.
5.   The verdict is so clearly wrong that it cannot be allowed to stand.

This is an action of assumpsit to recover an alleged balance of $2,068.24 due plaintiff from defendant on account of transactions between the parties embracing the purchase and marketing of hay. At the return term the defendant filed his pleadings of the general issue, and an account in set-off alleging a net balance of $1,892.61 due him. An auditor was appointed by the court, who after hearing the entire case, reported that, if the plaintiff's contentions were correct, the defendant owed him $1501.12; and that if the defendant's contentions were correct, the plaintiff owed him $2024.13. The

report of the auditor was accepted and the matter was submitted to a jury who returned a verdict for plaintiff for $1501.12, and the defendant filed a general motion for a new trial. Motion sustained. Verdict set aside.

Case stated in the opinion.

*McGillicuddy & Morey,* for plaintiff.

*William H. Newell,* for defendant.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, MORRILL, WILSON, JJ.

CORNISH, C. J. The plaintiff brought this action to recover an alleged balance of $2,068.24. The declaration contains two counts, one for a balance of $96.04 claimed to be in the defendant's hands for hay sold by him on commission under an agreement made between the parties prior to the Summer of 1917; the other count seeks to recover his one-half of the profits realized in the purchase and sale of hay under an agreement made between the parties in the Summer or Fall of 1917, the net balance of these profits alleged to be retained by the defendant being $1,972.20. There is some discrepancy as to figures in the two counts but the net balance claimed on both counts is distinctly stated as $2,068.24. At the return term the defendant filed an account in set-off alleging a net balance of $1,892.61 due him.

The cause was then sent to an auditor who heard the parties, thoroughly investigated the accounts, stated them clearly and in detail, and in conclusion found that if the plaintiff's contentions are sustained, he is entitled to recover from the defendant the sum of fifteen hundred and one dollars and twelve cents; while if the defendant's contentions are sustained he should recover from the plaintiff a balance of two thousand twenty-four dollars and thirteen cents. This report is accepted by both sides as correct, and is in no way attacked. The cause was then submitted to a jury who sustained the plaintiff's contentions and found a verdict in his favor for the sum of $1,501.12 in accordance with the auditor's report under those circumstances. The case is now before the Law Court on a general motion for a new trial.

This action grew out of the business dealings of the parties in the purchase and sale of hay extending from the Spring or Summer of 1917 to the Summer of 1918. It appears that the defendant was

an extensive buyer and seller of pressed hay for the market; the plaintiff was engaged in the same business but on a much smaller scale. In the Summer of 1917 the plaintiff had fifteen cars of hay that he had bought on his own account and he made an arrangement or oral contract with the defendant by which the latter was to sell the same for the plaintiff on a commission of fifty cents per ton. There is no dispute between the parties as to the making of this first arrangement nor its terms. They are in accord on this first contract. The hay was disposed of by the defendant and on November 24, 1917, the parties met at the defendant's house to make a settlement. The returns had come in for twelve cars but not for the other three. They therefore balanced the account for the twelve cars and a check for the amount due the plaintiff was delivered to him. There is no controversy over that. As to the remaining three cars the parties do not agree, the plaintiff claiming that the defendant gave a check at the same time for $300, that is $100 on account of each of the three remaining cars, and the defendant, that the three cars were to be included under another and new agreement made the same day as, and immediately after, the settlement, and that the $300 check was given on account of that new agreement. It is unnecessary however to pass upon this issue. It is a minor one in the consideration of the case and eventually disappears.

The important controversy pertains to the dealings between these parties from and after November 24, 1917, to the close of the transactions. The plaintiff claimed in his testimony before the auditor, as appears by the report, and again before the jury, that three separate and distinct agreements were made as the bases of their dealings beginning with November 24, 1917, and it is this contention which the auditor refers to in his report and which, if sustained, would give the plaintiff a balance of $1501.12, the amount which the jury found due him; while the defendant contends that there was only one agreement, the one made on November 24, 1917, and that this agreement continued unchanged and unmodified to the end. It is this contention which the auditor refers to in his report and which if sustained would give the defendant a balance of $2024.13 against the plaintiff.

We can narrow the issue to still closer limits. Both parties agree as to the terms of the new arrangement made on November 24, 1917. They were these. The defendant was to furnish the money for the

purchase of hay on receipt of bills of lading and was to make the sales; the plaintiff was to make the purchases and attend to the pressing and shipment. After the payment of all bills, they were to share equally in the profits and the losses. It was a joint enterprise, each to do his agreed part and both to gain or lose in equal proportions.

The plaintiff entered upon this second contract and says that he purchased only eleven cars under it, when a third arrangement was made by which the defendant who had then secured a government contract for $18 per ton, in effect guaranteed the plaintiff one-half the profits on the basis of $18 per ton on board car, and that ten cars were shipped under that third arrangement; that then a fourth agreement was made by which the selling price was raised to $20 per ton on board car, the defendant having a government contract at that figure and that this was a guaranteed sum for the basis of profits to the plaintiff. The plaintiff's testimony on these points is vague, unsatisfactory and unconvincing, and there is no corroboration of these claims as to the third and fourth contracts either in testimony or circumstances, and there is much to negative them.

On November 24, 1917, when the second admitted arrangement was made, the defendant had no government contracts and expected to and did sell in the open market. Then on January 26, 1918, he secured a contract with representatives of the government for ten cars at $18 per ton, f. o. b., and on February 7, 1918, he obtained a contract for twenty-five cars at $20 per ton, f. o. b. Both contracts however specified that the hay must be of a particular quality, viz: No. 2 Timothy. It is obvious from the plaintiff's own testimony that he had talked the matter over with the defendant many times and knew the quality required to fulfil these contracts. At first he denied any knowledge that the hay would be rejected if not up to contract grade, but he finally, though reluctantly, admitted that he supposed that would be the case.

It is also proven that a large number of cars were rejected by the government inspectors because of inferior quality and were disposed of by the defendant at a compelled loss. These losses however, all of which appear in the auditor's report and are therefore admitted to be correct, the plaintiff seeks to avoid, and he would force the defendant to pay him one-half of the profits which would have been realized had the price of $18 under the alleged third agreement, or

$20 under the alleged fourth agreement, been received, while the defendant must bear the entire loss due to the rejection of a portion of the hay which the plaintiff had purchased and which the defendant had never seen.   That the defendant should have entered into any such one-sided arrangement is little short of preposterous.   It taxes human credulity too severely.   He says that the contract of November 24 was never changed or modified, and the subsequent conduct of the parties, their interviews and their correspondence stamp this statement as true.

The plaintiff was called to Federal service on June 24, 1918, but all the hay had been purchased before that time.   His letter to the defendant under date of July 9, 1918, reveals his appreciation of the fact that it had been a losing venture.   But most significant of all is the statement of his claim in his writ, when he sets up not four contracts but two, one in the Summer of 1917 on the commission basis and the other "in the Summer and Fall of 1917" on the division of profits basis followed by the allegation "that in pursuance of said contract the plaintiff in the Summer and Fall of 1917 and down until 1918 purchased hay to the amount of $17,473.18 for the defendant and that the amount of profit due him on the sale of said hay according to the contract aforesaid was the sum of $2292.89."   Not three contracts, but one, and that one continuing from the Summer or Fall of 1917 down until the Summer of 1918, and, as the amount of the sales shows, covering the entire transaction to the very end.   From this statement of his own claims in the writ made on July 15, 1919, one year after the dealings had been closed, there is no escape. . That declaration, so far as the number and substance of the agreements between the parties are concerned, expresses the defendant's contention as well as the plaintiff's at that time.   The only matter in dispute was the amount due to either party.   That computation was referred to an auditor, and then it was that the plaintiff first claimed three agreements on and after November 24, 1917, instead of one as alleged in his writ.   The defendant has been consistent throughout and has always maintained the existence of only the one agreement.   That position is fully substantiated by the acts of the parties and the circumstances of the case.

As the verdict is palpably in opposition to the evidence, the entry must be,

                                                                  Motion sustained.